IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| CATHERINE BINHLAM, | ) |
| | ) Case No. |
| Plaintiff | ) |
| | ) JURY DEMAND |
| vs. | ) |
| | ) |
| ONLINE HEALTH, INC., f/k/a | ) |
| GORDIAN HEALTH SOLUTIONS, | ) |
| INC., | ) |
| | ) |
| Defendant. | ) |

## COMPLAINT

Comes the Plaintiff, Catherine Binhlam, by and through counsel, and would show the Court as follows:

1. Plaintiff Catherine Binhlam is an individual residing within this State.

2. Defendant Online Health, Inc. is a corporation incorporated under the laws of Tennessee and doing business within this State. Until filing amended and restated formation documents in January of 2011, Defendant was registered and doing business under the name Gordian Health Solutions, Inc. Defendant may be served through its registered agent William Young at 1 Cameron Hill Circle, Chattanooga, TN 37402.

## JURISDICTION & VENUE

3. This Court has jurisdiction over this matter pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, as amended, and the Age Discrimination in Employment Act of 1967, 29 U.S.C. § 621 *et seq.*, as amended.

4. This Court also has supplemental jurisdiction pursuant to 28 U.S.C. §

1367.

5. Venue is proper in that the acts complained of occurred within the confines of the jurisdiction of this court.

## FACTUAL ALLEGATIONS

6. Plaintiff is an Asian who immigrated to the United States from South Vietnam at the age of 14. Accordingly, Plaintiff is of a race and national origin protected by federal laws prohibiting discrimination.

7. During the time period at issue, Plaintiff was above the age of 40, and, therefore, in an age group protected by federal laws against discrimination.

8. Defendant, which is a subsidiary of Blue Cross Blue Shield of Tennessee, is in the business of providing health coaching, health assessments and on site services pertaining to wellness.

9. Plaintiff was hired by Defendant on January 1, 2007 as a "Participant Services Specialist."

10. As a Participant Services Specialist, Plaintiff was responsible for answering incoming phone calls, determining the caller's needs and then transferring the caller to a health coach tailored to the caller's needs.

11. Upon information and belief, Plaintiff was the only Asian employed by Defendant during the span of her employment with Defendant.

12. Plaintiff was 46 years old at the time she was hired by Defendant. Upon information and belief, Plaintiff was older than the vast majority of persons in the Participant Services Department.

13. Defendant had a policy of promoting from within the Company.

2

Typically, employees, who were non-Asian and younger than 40, were promoted quickly and often.

14. Plaintiff applied for higher paying positions within Defendant, but was repeatedly rejected. Instead, the jobs were given to non-Asian employees under the age of 40.

15. Defendant's Human Resources Department told Plaintiff that she would have a better chance at becoming a health coach if she had a nursing degree. Plaintiff already had a bachelor's degree in sales and marketing from the University of Texas, San Antonio. Defendant promised Plaintiff that Defendant would reimburse Plaintiff for tuition and books if she went to nursing school.

16. Consequently, and upon the encouragement of Defendant, Plaintiff enrolled in Columbia State Community College's nursing program and began working night shifts at Defendant so that she could attend classes during the day. Plaintiff paid for her tuition and book expenses with the expectation that she would be reimbursed by Defendant.

17. During the time period of Plaintiff's employment, there were three other people who were Participant Services Specialists. The Participant Services Specialists were supervised by the "Participant Services Supervisor."

18. For the first three months of her employment, Plaintiff was supervised by Mitch Beeson, a white male in his early thirties. Mr. Beeson was promoted by Defendant and replaced by Jason Henderson, another white male in his early thirties. Shortly thereafter, Mr. Henderson was promoted by Defendant, thereby leaving a vacancy for Participant Services Supervisor.

19. Plaintiff applied for the position of Participant Services Supervisor. Even though Plaintiff was told by Defendant that she was well qualified, Defendant appointed Andrea Eaton to the position. Ms. Eaton was a white 32 year old female who had been employed by Defendant for six months.

20. Ms. Eaton, on behalf of Defendant and with Defendant's approval, subjected Plaintiff to constant harassment, threats and intimidation. For example, Ms. Eaton repeatedly criticized Plaintiff's accent and mocked her Asian appearance. While Plaintiff spoke to clients on the phone, Ms. Eaton cringed, made inappropriate faces, stuck her fingers in her ears to shut out Plaintiff's voice and stretched the corners of her eyes to imitate the facial characteristics of the Asian race.

21. Moreover, even though Ms. Eaton consistently approved the vacation requests of the other three employees in her department, she refused to allow Plaintiff a personal day off.

22. During an evaluation, Ms. Eaton told Plaintiff that she (Ms. Eaton) was raised in a small, Midwest town and "could not help being racist."

23. Plaintiff subsequently approached Defendant's Human Resources Department regarding her unfair treatment by Ms. Eaton.

24. Chad Shake, Human Resources Specialist for Defendant, told Plaintiff that she had to do what management wanted her to do if she wanted to keep her job.

25. Defendant had a progressive disciplinary policy providing that an employee would receive corrective action warnings before he or she would be terminated.

26. During her employment with Defendant, Plaintiff never received a

4

warning under the progressive disciplinary policy.

27. On, September 12, 2008, Defendant terminated Plaintiff. Ms. Eaton and Mr. Shake, the Human Resources Specialist, gave Plaintiff notice of the termination in a meeting wherein they provided her a Corrective Action Form indicating her termination. A copy of the Corrective Action Form is attached hereto as <u>Exhibit 1</u>.

28. The Correction Action Form states that Plaintiff received "opportunities for training and improvement," but that Plaintiff's "performance ha[d] not improved." *See* Exhibit 1.

29. In fact, Plaintiff had not previously received opportunities for training and was never formally trained for her position as a Participant Services Specialist.

30. Just three days prior to Plaintiff's termination (September 9, 2008), Ms. Eaton sent Plaintiff an e-mail notifying her that Defendant "finally ha[d] the opportunity to get Plaintiff the training" she needed and that the training was set to begin the following week and continue over a three-week period. A copy of the e-mail is attached hereto as <u>Exhibit 2.</u>

31. Moreover, Plaintiff had never received a warning under the progressive disciplinary policy that her performance must improve.

32. This lack of warning stood in stark contrast to the treatment of Plaintiff's co-workers who, around the same time period, received warnings and were placed on corrective action plans by Defendant.

33. Plaintiff did not agree with the statements in the Corrective Action Form and, therefore, refused to sign it. *See* Exhibit 1.

34. Plaintiff was thereafter escorted from the office in a humiliating manner.

5

35. Defendant's actions, by and through its employees and agents, constitute unlawful race discrimination and age discrimination.

36. Plaintiff timely filed a Charge of Discrimination with the Equal Opportunity Commission ("EEOC") on May 29, 2009. A copy of the Charge of Discrimination is attached hereto as Exhibit 3.

37. Plaintiff received a Letter of Determination from the EEOC on April 30, 2011, a copy of which is attached hereto as Exhibit 4. The Letter states that the EEOC found reasonable cause to believe that Defendant discriminated against Plaintiff based upon her race (Asian) and national origin (Vietnamese) and not allowing her the opportunity of the progressive disciplinary policy. The Letter gave Plaintiff notice of her right to sue on the remaining grounds in the Charge of Discrimination.

38. Ultimately, the EEOC decided that it would not bring suit on its determination that Plaintiff had been discriminated against based upon race and national origin and issued a Notice of Right to Sue on those issues, which Plaintiff received on July 19, 2011. A copy of the Notice of Right to Sue is attached hereto as Exhibit 5.

39. Plaintiff has suffered damages, and Defendant's actions, by and through its employees, was the cause of those damages. Further, the actions of Defendant in discriminating against Plaintiff was malicious, intentional and in reckless disregard of Plaintiff's rights under the law.

40. Plaintiff is entitled to back pay money damages equivalent to the wages Plaintiff should have received if not for Defendant's wrongful failure to promote her through the date of judgment. Alternatively, Plaintiff is entitled to lost wages from the date she was wrongfully terminated until the date of judgment.

41. Plaintiff is also entitled to front pay money damages for her future lost earnings and in lieu of reinstatetment.

42. Plaintiff is also entitled to recover compensatory damages for the emotional pain and suffering she experienced at having being harassed, wrongfully denied a promotion and wrongfully terminated from employment by Defendant.

43. Plaintiff is also entitled to recover the money she spent on tuition and books in reliance on Defendant's fraudulent and/or negligent misrepresentations.

44. Plaintiff is also entitled to recover punitive damages because Defendant's actions against Plaintiff were malicious, intentional and in reckless disregard of Plaintiff's rights under the law.

45. Plaintiff is also entitled to recover her reasonable costs, expenses and attorney fees expended herein.

## COUNT I: DISCRIMINATION BASED UPON RACE AND NATIONAL ORIGIN

46. Plaintiff incorporates the proceeding paragraphs as if restated herein.

47. Plaintiff is in a racial and ethnic class protected by federal law.

48. Defendant treated Plaintiff less favorably than its employees who were not Asian and of Vietnamese origin. Specifically, Defendant, through its employees, harassed, wrongfully failed to promote, and wrongfully terminated Plaintiff without allowing her the opportunity of the progressive disciplinary policy.

49. Defendant intentionally treated Plaintiff unfavorably because of her race and origin.

50. In doing so, Defendant has violated Title VII of the Civil Rights Act, 42 U.S.C. § 2000e *et seq.*, as amended, prohibiting discrimination in employment.

51. As a result, Plaintiff has suffered damages in an amount to be proven at trial.

### COUNT II: AGE DISCRIMINATION

52. Plaintiff incorporates the preceding paragraphs as if restated herein.

53. Plaintiff is over the age of 40 and, therefore, in a class protected by federal law.

54. Defendant treated Plaintiff less favorably than its younger employees. Specifically, Defendant, through its employees, harassed, wrongfully failed to promote, and wrongfully terminated Plaintiff without allowing her the opportunity of the progressive disciplinary policy.

55. Defendant intentionally treated Plaintiff unfavorably because of her age.

56. In doing so, Defendant has violated the Age Discrimination in Employment Act of 1967, 29 U.S.C. § 621 *et seq.*, as amended, prohibiting discrimination in employment.

57. As a result, Plaintiffs have suffered damages in an amount to be proven at trial.

### COUNT III: FRAUDULENT MISREPRESENTATION

58. Plaintiff incorporates the preceding paragraphs as if restated herein.

59. Defendant made false representations that it would reimburse Plaintiff for her tuition and books if she attended nursing school.

60. Defendant made those representations knowing they were untrue or with reckless disregard for their truth.

61. Plaintiff relied upon Defendant's representations in applying to nursing

school and paying for the costs of tuition and books.

62. As a result, Plaintiff has been damaged in an amount to be proven at trial.

63. Moreover, Defendant acted intentionally, maliciously and/or recklessly in making false representations to Plaintiff.

64. Plaintiff is entitled to punitive damages to punish Defendant for its intentional, malicious and/or reckless behavior and to deter it from engaging in such behavior in the future.

## COUNT IV: NEGLIGENT MISREPRESENTATION

65. Plaintiff incorporates the proceeding paragraphs as though fully set forth herein.

66. Defendant made false representations that it would reimburse Plaintiff for her tuition and books if she attended nursing school.

67. Defendant did not exercise due care in obtaining or conveying the false information to Plaintiff.

68. Plaintiff relied upon these representations in applying to nursing school and in paying for the costs of tuition and books.

69. As a result, Plaintiff has been damaged in an amount to be proven at trial.

**WHEREFORE, PREMISES CONSIDERED, PLAINTIFF PRAYS:**

a) That Defendant be served with a copy of the Summons and Complaint and be required to answer within the time prescribed by law;

b) That Plaintiff be awarded money damages for back pay, front pay, compensatory damages and punitive damages for employment discrimination.

c) That Plaintiff be awarded compensatory damages and punitive damages

for fraudulent misrepresentation and/or negligent misrepresentation.

    d)     That Plaintiff be awarded reasonable costs, expenses and attorneys' fees expended herein;

    e)     That a jury be impaneled to hear this case; and

    f)     That Plaintiff be awarded any and all other relief to which she may be entitled.

Respectfully submitted,

*/s/ Andrea McKellar*

Andrea McKellar
MCKELLAR LAW
201 Fourth Avenue North
Suite 1130
Nashville, TN 37201
(615) 567-5794
(615) 567-5795
andie@mckellarlaw.com